UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY NEDROW,

        Plaintiff                             Civil Action No. 04-73443

v.                                     HON.  DENISE PAGE HOOD
                                       U.S. District Judge
                                       HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Jeffrey Nedrow brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income (SSI) benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).   I recommend that Defendant's Motion for Summary Judgment be denied, Plaintiff's Motion for Summary Judgment granted, and the case remanded for an award of benefits.

## PROCEDURAL HISTORY

On August 28, 2001, Plaintiff filed an application for benefits, alleging an onset of disability date of April 4, 2001 (Tr. 55-57).   After the denial of his claim, Plaintiff filed a

request for an administrative hearing, held on March 9, 2004 in Flint, Michigan before Administrative Law Judge (ALJ) Regina Sobrino (Tr. 284).[1]  Plaintiff, represented by attorney Lewis Seward, testified. (Tr. 288-312, 328-331).  Plaintiff's wife, Janet Nedrow, and Elaine Tripi, acting as Vocational Expert (VE) also testified (Tr. 312-319, 330, 319-327). ALJ Sobrino found that although Plaintiff had no past relevant work, he retained the residual functional capacity to perform a limited range of sedentary work, found in significant numbers in the national economy (Tr.  18).  On November 23, 2004, the Appeals Council denied review (Tr. 5-7).  Plaintiff filed for judicial review of the final decision on September 16, 2004.

## BACKGROUND FACTS

Plaintiff, born June 30, 1962, was age forty-one when the ALJ issued her decision  on April 27, 2004 (Tr. 19).  He received a general equivalency diploma, but has no past relevant work experience as defined by the Social Security Act (Tr. 14).  Plaintiff alleges disability to due to injuries sustained in a April, 2001 accident (Tr. 289-290).

### A.      Plaintiff's Testimony

Plaintiff testified that he quit school in eleventh grade, but eventually received a GED (Tr. 288).  He stated that with the exception of two days on which he had attempted to perform work for a roofing company, he had not worked since sustaining injuries in a fall in

---

[1]ALJ Sobrino rescheduled the original administrative hearing, commenced on December 9, 2003 after Plaintiff, appearing pro se, requested an adjournment until he could retain an attorney (Tr. 280).

April, 2001 (Tr. 289).  He reported that he received care from a pain management specialist who currently prescribed Vicodin, Salmeterol, and Valium, adding that he had refrained from taking his medications that day in anticipation of testifying (Tr. 291).  He stated that he did not experience side effects from his prescribed medications (Tr. 291).  He testified he had not been hospitalized overnight since April, 2001, but had sought emergency room treatment after sustaining a ladder injury, and on another occasion, for back pain (Tr. 291).

Plaintiff testified that in addition to taking the above medications, he had received injections to relieve back pain caused by a deteriorating disc (Tr. 292-293).  He stated that back pain prevented him from walking for more than twenty to twenty-five minutes, sitting for more than twenty, and standing for more than thirty (Tr. 293).  He reported that he did not use a cane or crutches, indicating that his limited range of activities did not require him to walk extensively (Tr. 293).  He testified further that he had only limited use of either arm, alleging difficulty lifting a gallon of milk, and adding that his ability to grasp objects with his dominant hand (right) was limited by wrist and hand pain (Tr. 294).   He indicated that he continued to write well enough to complete a form, stating further that hand problems obliged him to write slowly (Tr. 294).  He testified that his ability to reach overhead was restricted by a left shoulder dislocation, and that ankle pain prevented him from crouching for long periods (Tr. 295).  He reported difficulty climbing more than a few steps at a time (Tr. 295).

Plaintiff stated that his wife performed most of the household chores and grocery shopping and that he sometimes needed his wife's help in washing his hair (Tr. 296, 298).

-3-

He reported that he rarely received guests at home, but visited his mother once a month when he made the one hundred and eighty-mile trip to see one of his physicians (Tr. 297-298). He testified that had not driven since his license was suspended after he pled guilty to impaired driving (Tr. 299). He reported that he had attended AA meetings for a year following his arrest, but could no longer afford to attend meetings, adding that at present, he drank rarely and did not take drugs (Tr. 300).

Upon questioning by his attorney, Plaintiff qualified his earlier statement that he did not experience side effects, stating that he experienced mental confusion and drowsiness after taking his pain medication (Tr. 302-303). He testified that he experienced constant back pain, frequent left shoulder pain, and intermittent hip pain, adding that cold and damp weather exacerbated his discomfort, and that back pain often prevented him from sleeping (Tr. 305, 307-308). He reported that fatigue obliged him to lie down approximately two to three times a day for at least twenty minutes (Tr. 308). He denied any symptoms from Hepatitis C for which he had been recently diagnosed (Tr. 308). He opined that he had either contracted Hepatitis C from heroin use or from the blood transfusions he received after being shot at the age of eighteen (Tr. 312).

### B.   Plaintiff's Wife

Plaintiff's wife, Janet Nedrow, testified that she believed that the medications taken by her husband had reduced his comprehension skills, reporting that she proofread his application forms for SSI benefits for spelling errors (Tr. 314). She stated that she performed most of the household chores and handled all of the family's financial transactions (Tr. 316-

-4-

317).  She reported that she and her husband played cards or watched movies for relaxation (Tr. 317).  She testified that he obtained partial relief of back pain from steroid injections (Tr. 318).

### C.    Medical Evidence

On April 5, 2001,  Plaintiff sustained injuries after a guard rail collapsed, causing him to fall forty feet onto broken concrete (Tr. 130).  Plaintiff was transported to Saint Mary's Medical Center in Saginaw, Michigan where he was treated for multiple lacerations, a grade 2 splenic injury, as well as right elbow, multiple rib, right scalpular, and glenoid fractures (Tr. 149).  Treating staff admitted Plaintiff to the trauma unit, where he underwent a right tube thorocostomy during his nineteen day stay (Tr. 143).  Tahir Chaudhri, M.D. found Plaintiff's elbow injury "extensive, with gross comminution of all the three bones involving making the elbow joint," opining that he "most likely would require extensive reconstructive process," adding that "returning to a normal function is going to be impossible with the type of injury [Plaintiff] has" (Tr. 141).  Dr. Chaudhri, deeming Plaintiff's condition as  "life threatening," noted further that at the time of his transfer to Detroit Receiving Hospital he was still unable to walk (Tr. 146). Transfer records also indicate that attempts to treat Plaintiff for multiple injuries were  complicated by his heroin addiction,  noting that he showed symptoms of withdrawal during his hospitalization, including agitation, which required staff to keep him under sedation (Tr. 144).

Admittance records from Detroit Receiving Hospital show that Plaintiff was transferred immediately to the trauma ward (Tr. 155).  Plaintiff left the hospital one day later against the

-5-

medical advice of staff who advised him of possible complications, including death as a result of a premature discharge  (Tr. 159).   In May, 2001, Plaintiff sought treatment for continuing pain at MidMichigan Medical Center in Gladwin, Michigan (Tr. 176).   He received a prescription for Darvocet and Flexeril (Tr. 170-171).   X-rays performed in June, 2001 showed a "grossly abnormal elbow," as well as evidence of an "irregular bony density with may represent heterotopic bone formation" (Tr. 168-169).  In October, 2001  Plaintiff again sought treatment for lower back pain and wrist pain, receiving a prescription for Vicodin, Velcro wrist splints, and instructions to keep his right wrist higher than his heart (Tr. 164-165).

In December, 2001, Plaintiff began treatment with Plaintiff Belal Abdallah, M.D. (Tr. 270).  Dr. Abdallah noted that Plaintiff complained of muscle spasms and tenderness as well as limitation of movement in the mid-thoracic spine (Tr. 266).  She prescribed Soma and Vicodin (Tr. 270).   In May, 2002, she recommended that Plaintiff perform muscle strengthening exercises (Tr. 263).   In June, 2003 Dr. Abdallah's notes show that Plaintiff received a diagnosis of Hepatitis C (Tr. 247).  Plaintiff continued to see Dr. Abdallah on a monthly basis throughout 2003 and for at least the first two months of 2004.

In January, 2002,  Bradley Haas, M.D., performed a consultive examination on behalf of the State of Michigan's Disability Determination Service (DDS) (Tr. 203-206).  Dr. Haas, noting that Plaintiff did not require an assistive device, found that Plaintiff could sit for a maximum of fifteen minutes, stand for a maximum of ten, and walk for up to twenty minutes (Tr. 203).  He found that Plaintiff retained the ability to lift seven pounds with his

-6-

right arm and twenty pounds with his left, but could not perform "heavier auto mechanics" or push a lawn mower (Tr. 203). He concluded that because of a "severe problem with his right elbow which needs to be rebuilt," Plaintiff could not "significantly supinate, pronate, flex, or extend the elbow," but maintained "adequate grip strength and dexterity" (Tr. 206). Apart from upper extremity problems, he found further that Plaintiff experienced mild difficulty with lower extremity maneuvers with a mild right sided limp related to his right acetabular fracture" (Tr. 206).

In February, 2002 John R. Baritone completed a Physical Residual Functional Capacity Assessment, finding that Plaintiff could lift up to twenty pounds occasionally with his left arm and lift ten pounds frequently (Tr. 209). He found that Plaintiff could stand or sit for up to six hours in an eight hour workday and retained a limited ability to push and pull in the upper extremities (Tr. 209). He found further that Plaintiff was limited to only occasional balancing, stooping, kneeling, crouching, crawling, as well as occasional climbing of ladders, ropes, and scaffolds (Tr. 210). He opined that Plaintiff retained the ability to handle, finger, and feel on a constant basis, but should be limited to occasional reaching (Tr. 211). He found that Plaintiff should avoid concentrated exposure to hazards and heights as well as the use of power or air tools with his right upper extremity (Tr. 212). He concluded that Plaintiff was only partially credible, observing that Plaintiff's allegations of limitations stood at odds with his apparent ability to use his upper left extremity (Tr. 207).

In March, 2002, an x-ray of Plaintiff's lumbar spine showed moderate narrowing of Lr-L5 and L5-S1 disc space with arthritic changes (Tr. 218). In April, 2004, Plaintiff

underwent a successful repair of a ventral hernia  (Tr. 219).

In June, 2002, Plaintiff sought evaluation by pain management specialist Craig McCardell, M.D. (Tr. 223-224).  Dr. McCardell, noting that Plaintiff experienced cervical spinal stenosis, lumbar disk herniation, and secondary myofascial dysfunction, later recommended that he undergo epidural steroid injections of the lumbosacral spine, opining that Plaintiff should discontinue his use of Soma (Tr. 221).  In a September, 2003 letter, Dr. McCardell  stated that he treated Plaintiff primarily for low back and leg pain, noting that "numerous other injuries" had been addressed by his primary care physician (Tr. 216).  He reported that he had prescribed Kadian, an opiate derived product, at a dose of 30 mg. per day (Tr. 216).  X-rays ordered by Dr. McCardell in December, 2003 showed "[m]oderate bulging disk and moderate spinal canal stenosis at L4-L5, with narrowing of the neural formamina bilaterally," along with "mild degenerative facet joint changes at L4-L5 and L5-S1," along with a small bone island at L1" (Tr. 238).

In February, 2004, Dr. Abdallah opined that Plaintiff could not perform sedentary work on a "regular and continuous basis," due to the "nature and severity of his pain" caused by his April, 2001 fall (Tr. 271-272).  Dr. Abdallah stated that he had observed Plaintiff "in obvious pain when he presents in the office."  He noted further that Plaintiff experienced "difficulty sitting [or] standing for any length of time" along with a [fifty percent] reduction in range of motion in all planes" (Tr. 272).  He noted further that Plaintiff's discomfort, along with the drowsiness caused by his pain medication would preclude full-time employment (Tr. 272). .

### D.        Vocational Expert Testimony

The ALJ's stated on the record that Plaintiff's previous work as a roofer, asphalt paver, and sealer did not generate earnings sufficient as "past relevant work" as defined by the Social Security Act (Tr. 320-321). ALJ Sobrino then posed the following  question to VE Stephanee Leach:

> "Assume that this hypothetical individual was born in 1962 and has a general equivalency diploma.  Assume that the individual is limited to lifting and carrying ten pounds using both hands.  The individual should not push or pull. The individual is limited to standing and walking no more than a total of four of eight hours in an eight hour work day and sitting six of eight hours. J The individual should be able to alternate position at will.  The individual cannot crouch, can occasionally climb stairs, can rarely bend, cannot climb ladders, ropes or scaffold or crawl, should not be exposed to vibration and that would include power tools and air tools, should not perform work that involves full extension of the right elbow.  The right arm is the dominant arm.  And the individual should not engage in forceful gripping, grasping, pinching, squeezing or twisting.  The individual should not be exposed to hazards, should not perform work that involves over-the-shoulder reaching, driving should not be work duty.  The individual should have a clean air environment.  Assume that the individual is limited to performing work that is simple and routine in nature.  Are there any jobs in the regional or national economy that are compatible with these limitation[s] and vocational factors?

(Tr. 321).

The VE found that given the above limitations, Plaintiff could perform a range of sedentary unskilled work, including work as a surveillance system monitor (1,500 jobs), packer (1,000 jobs), sorter (1,000 jobs), visual inspector (1,800 jobs), and clerk (1,000 jobs) (Tr. 322) She stated that the jobs cited above were consistent with the information provided in Dictionary of Occupation Titles (DOT) and represented incidental figures for the lower peninsula of Michigan (Tr. 323).

**E.    The ALJ's Decision**

ALJ Sobrino determined that Plaintiff had the severe impairments of "residuals of right elbow and hip fractures, degenerative disc disease of the cervical and lumbar spine, and a chronically dislocating left shoulder," finding however,  that Plaintiff's impairments did not meet or medically equal one of the listed impairment found in Appendix 1, Subpart P, Regulation No. 4 (Tr. 18).

The ALJ found that Plaintiff retained the residual functional (RFC) capacity to

"lift and carry 10 pounds, using both hands.  He should not push or pull.  He can stand/walk 4 hours per 8-hour work day and sit at least 6 hours per 8-hour work day.  He should have the opportunity to alternate position at will.  The claimant cannot crouch, crawl or climb ladders, ropes or scaffolds.  He can occasionally climb stairs and rarely stoop. [He]cannot perform work that requires forceful gripping, graspiing, pinching, twisting or squeeziing.  He cannot reach over shoulder level.  He should avoid exposure to hazards and ibration.  He should have a clean air environment, and should not drive or operate machinery as a work duty.  He should not perform work that involves full extension of the right elbow.  Due to alleged medication side effects, he is limited to performing simple, routine work"
 (Tr. 18).

Based on Plaintiff's RFC, she found that he could  perform the work of a security systems monitor, packer, sorter, visual inspector, and clerk, adopting the VE's job numbers estimate given at the hearing,  Section **D**., *supra* (Tr.17).

The  ALJ  supported  her  non-disability  determination  by  stating  that  she  found Plaintiff's "allegations of disabling symptoms . . . not fully substantiated by the objective medical or other evidence," citing Plaintiff's continued ability to make three hour trips on a monthly basis, and the February, 2002 Physical Residual Functional Capacity conclusion

-10-

that Plaintiff retained the capacity to perform work at a higher exertional level than that found in the SSA administrative findings (Tr. 17, 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

-11-

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.    Treating Physician

Plaintiff maintains first that the ALJ, declining to accord controlling weight to Dr. Abdellah's opinion that he was precluded from full time employment, performed a flawed analysis of the treatment relationship insufficient to meet the requirements of 20 C.F.R. §404.1527(d)(2). *Plaintiff's Brief* at 3-6 *citing* Tr. 272.

In *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991), the court held that "it is well-settled in this circuit that treating physicians'

-12-

opinions, based on objective evidence, should be accorded significant weight.   If
uncontradicted, the physicians' opinions are entitled to complete deference." In *Wilson v.
Commissioner of Social Sec.* 378 F.3d 541, 544  (6th Cir. 2004) the court stated:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ
> must apply certain factors--namely, the length of the treatment relationship and
> the frequency of examination, the nature and extent of the treatment
> relationship, supportability of the opinion, consistency of the opinion with the
> record as a whole, and the specialization of the treating source--in determining
> what weight to give the opinion."

 Further, the "ALJ must 'give good reasons' for not giving weight to a treating
physician in the context of a disability determination." *Id.*; 20 C.F.R. §404.1527(d)(2).

The ALJ's analysis of Dr. Abdellah's disability opinion is only minimally supported.[2]
 The ALJ supports her unwillingness to accord controlling weight to Dr. Abdellah's opinion
by noting that other record evidence contradicts his conclusions.  However,  a substantial
portion of the material cited by the ALJ  amounts to  a misreading, or distortion of the record.

First, the ALJ discounts Dr. Abdellah's opinion by stating that although Plaintiff
complained of debilitating side effects, his notes contained "no discussion of efforts to adjust
the medication doses or regiment to alleviate side effects" (Tr. 16).   However, contrary to
that statement, Dr. McCardell discontinued Plaintiff's use of Soma in April, 2003, and

---

[2]In addition to the  discussion of non-primary medical sources which the ALJ cites
to support her treating source conclusion, the administrative decision also discredits Dr.
Abdellah's disability opinion by citing Plaintiff's daily activities.  Since the daily
activities are assigned "double duty" in that they are also used to impugn  Plaintiff's
credibility, this portion of the administrative findings  will be dealt with below in the
section discussing the flaws in the ALJ's credibility determination.

prescribed a opium derivative the following September in an effort to treat Plaintiff with less addictive and more effective medication (Tr. 216, 221). Dr. Abdellah, a primary care physician, appears to have properly deferred to the expertise of Dr. McCardell, a pain management specialist, in making adjustments to Plaintiff's medication.

The ALJ further supports her rejection of Dr. Abdellah's opinion by quoting Dr. McCardell as stating that "the majority of [Plaintiff's discomfort was located in the lower back region" (Tr. 15). However, Dr. McCardell's treatment focus on Plaintiff's lower back and leg discomfort cannot be interpreted to suggest that Plaintiff suffered *only* from lower back and leg pain. In a September, 2003 letter, Dr. McCardell stated explicitly that "[i]n our anesthesia based pain management clinic, we have addressed low back and leg pain, which has (sic) hampered Mr. Nedrow," but states in the same letter that as a result of his 2001 accident, Plaintiff "developed *numerous other injuries*, which largely have been addressed by his primary care physician" (Tr. 216)(emphasis added).

Other portions of the record are similarly misapplied or given inflated significance. The ALJ cites a consulting physician's observation that Plaintiff retained the ability to "pick up a coin and close a door without difficulty," to support her conclusion, contrary to that of the long-time treating physician, that Plaintiff could perform gainful employment (Tr. 15).[3]

_____

[3]As conceded by the ALJ, Dr. Haas' January, 2002 conclusions also noted that Plaintiff walked with a limp, reported pain in the right elbow, left shoulder, right hip, lumbar spine, and lower extremities (Tr. 15). He observed further that Plaintiff experienced a greatly reduced range of motion (Tr. 203-206). Dr. Haas' conclusions do not substantially contradict the treating physician's determination that Plaintiff was disabled.

-14-

In fact, the only portion of the record which appears to truly contradict Dr. Abdellah's disability finding is the February, 2002 Physical Residual Function Capacity Assessment which concluded that Plaintiff retained the capacity to perform light work (Tr. 207). However, the ALJ conceded that the consulting physician's opinion should not be given significant weight, since he "did not have the benefit of evidence made of record after February, 2002 or of [Plaintiff's] testimony" (Tr. 17).[4]

Hence, the ALJ incorrectly discounted the opinion of the treating physician, and failed to give "good reasons" for doing so.  These errors require a remand under *Wilson*.

### B.  Credibility[5]

Plaintiff argues additionally that the ALJ, rather than performing a thorough credibility analysis required by SSR 96-7, made a "cursory" statement that Plaintiff's

---

[4]In addition to the reason cited by the ALJ to accord reduced weight to Physical Residual Functional Capacity Assessment, I note that Dr. Bartone's conclusions appear to ignore a significant portion of Plaintiff's medical history.  Although all of Plaintiff's other medical records allude to a dislocating left shoulder, the February, 2002 assessment does not appear to take into account corresponding limitations.  Dr. Bartone discounted a portion of Plaintiff's allegations by stating that it did not "seem reasonable that he couldn't use his [left upper extremities] so physical (sic) allegations are partially credible" (Tr. 207).  Given the repeated references to Plaintiff's dislocated left shoulder in the rest of the record (Tr. 224), Dr. Barone's finding that Plaintiff retained the ability to climb ropes occasionally strongly suggests that he ignored a significant portion of Plaintiff's medical history (Tr. 210).

[5]Plaintiff makes an additional argument that the ALJ did not include all of his relevant limitations when posing the hypothetical question to the VE. *Plaintiff's Brief* at 7.  Since sections A. and B. conclude that both the ALJ's treating physician and credibility analyses contain grounds for remand, the Court need not address the adequacy of the hypothetical question.

-15-

"allegations of disabling symptoms are not fully substantiated by the record." *Plaintiff's Brief* at 8 *citing* Tr. 18.

*Social Security Ruling* (SSR) 96-7p states that it is not sufficient for the ALJ to make a single, conclusory statement that the individual's allegations have been considered or that the allegations are or are not credible. *Id*, 1996 WL 362209, at 34484. The ALJ's decision must be based on specific reasons for the findings of credibility. *Id*. These reasons must be supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001); *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). Moreover, in reviewing the findings of the ALJ, the evidence must be reviewed as a totality, examining the record as a whole. *Mowery v. Heckler,* 771 F.2d 966, 970 (6th Cir. 1985).

The credibility analysis performed by the ALJ does not support her conclusions. Although I disagree with Plaintiff's contention that the administrative discussion was "cursory," the ALJ's reasons for rejecting Plaintiff's allegations, scattered throughout the opinion, misapply the record. The ALJ cites Plaintiff's ability to make a one hundred and eight-mile drive each month to see his mother to cast doubt upon his statement that he could only sit for fifteen to twenty minutes at a time, but fails to take into account Plaintiff's testimony that his discomfort during the trip obliged him to ask the driver to make frequent stops (Tr. 17, 298). Moreover, Plaintiff testified he made the monthly trip primarily for the purpose of seeing his pain management specialist, who practiced in the metropolitan Detroit

-16-

area (Tr. 298).  The ALJ cites Plaintiff's testimony that he sought emergency room treatment after being hit by a ladder while performing a household chore for the purpose of discounting his allegations of disability, yet the accident, which occurred when Plaintiff attempted to pull ice from a collapsing gutter, more logically illustrates that Plaintiff was incapable of performing meaningful household chores without risking serious injury (Tr. 17).  Moreover, Plaintiff's ability to perform some basic household activities sporadically does not preclude a finding of disability.  *See Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir.1967) (An individual's  performance of everyday tasks in spite of great pain does not indicate that he or she is capable of substantial gainful activity).

Likewise,  theALJ noted that Plaintiff did not use a cane but did not add that Plaintiff testified at the hearing that he did not use a walker a cane because he seldom walked for any length of time (Tr. 17, 293).  In addition, the ALJ erroneously stated that no effort had been made to adjust Plaintiff's medication to alleviate side effects, see section **A**., *supra.*  In short, the administrative opinion does not contain record support for its statement that Plaintiff allegations were"not fully consistent with the objective medical and other evidence" (Tr. 16).  Both Drs. McCardell and Abdellah found that Plaintiff's medical conditions warranted aggressive pain management, which included administering drugs universally recognized to cause fatigue and drowsiness.

In *Davis v. Apfel,* 133 F. Supp. 2d 542, 547 (E.D. Mich. 2001) the court held that "[t]he reviewing court must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard." *Id.*  The

-17-

court cautioned, however, that "a substantiality of evidence evaluation does not permit a selective reading of the record." *Id.*  Substantiality of the evidence must be based upon the record taken as a whole.  Substantial evidence is not simply some evidence, or even a great deal of evidence.  Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.*; *Laskowski v. Apfel,* 100 F. Supp. 2d 474, 482 (E.D. Mich. 2000).  *See also Cotter v. Harris*, 642 F.2d 700, 706 (3rd Cir. 1981) ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record"); *Kent v. Schweiker*, 710 F.2d 110, 114 (3rd Cir. 1983) ("Nor is evidence substantial if it is overwhelmed by other evidence...").

In this case, the ALJ's opinion on credibility and non-disability is based on a selective, and at times incorrect reading of the record.  Viewing the record as a whole, it cannot be said that the ALJ's decision is grounded in substantial evidence.

Because the ALJ's decision is not supported by substantial evidence, a remand is required.  The final question is whether to remand for further administrative proceedings and findings or to remand for an award of benefits using Plaintiff's disability onset date for calculating past due benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994), hold that it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking.

-18-

2:04-cv-73443-DPH-RSW   Doc # 24   Filed 12/16/05   Pg 19 of 20   Pg ID 432

*Faucher,* 17 F.3d at 176 (citing *Mowery v. Heckler*, 771 F.2d rectification, 973 (6th Cir. 1985)).   Even apart from the ALJ's flawed credibility determination, the opinion of Plaintiff's treating physician, supported by objective medical evidence, strongly shows that Plaintiff is unable sustain gainful employment. There is little, if anything, in this record that materially contradicts this opinion, which was improperly rejected by the ALJ, and which adequately supports Plaintiff's entitlement to benefits, pursuant to *Faucher*

### CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED, that Defendant's Motion for Summary Judgment be DENIED, and that the case be remanded for an award of benefits.

Any objections to this  Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).   Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

-19-

opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  December 16, 2005

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 16, 2005.

S/Susan Jefferson
Case Manager